IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| RECORDED BOOKS, LLC, | : Case No. _____ |
| Plaintiff, | : |
| v. | : **COMPLAINT** |
| OCLC ONLINE COMPUTER LIBRARY CENTER, INC. d/b/a NETLIBRARY, | : **JURY TRIAL DEMANDED** : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff RECORDED BOOKS, LLC ("Recorded Books"), a Delaware limited liability

company with its principal place of business at 270 Skipjack Road, Prince Frederick, Maryland

20678, alleges as follows:

## NATURE OF THE CASE

1.      This is an action for breach of contract, copyright infringement, and violations of

Section 43(a) of the Lanham Act.

2.      Recorded Books is the world's largest producer of independent audiobooks.

Recorded Books owns federally registered copyrights to approximately 7000 audiobooks.

Recorded Books derives nearly all of its revenue from the sale and licensing of its copyrighted

works.

3.      In 2004, Recorded Books entered into a licensing and distribution agreement with

the defendant, OCLC Online Computer Library Center, Inc., which permitted OCLC's

Dockets.Justia.com

NetLibrary division to provide an Internet-based subscription service for libraries in the United States giving library patrons access to "check out" and listen to a set of Recorded Books' copyrighted audiobooks (the "Licensing and Distribution Agreement" or "Agreement").

4.    The bargained-for terms of the Licensing and Distribution Agreement included: (a) an exclusivity provision, which permits Recorded Books to terminate the Agreement if NetLibrary enters into any additional, different agreements to provide subscriptions for Internet-based delivery of audiobooks from any publisher other than Recorded Books; and (b) requirements that NetLibrary meet certain technical and customer service standards. As set forth below, NetLibrary entered into additional, different agreements to distribute audiobooks from publishers other than Recorded Books and breached its Licensing and Distribution Agreement with Recorded Books by failing to meet the required technical and customer service standards in its distribution of Recorded Books' content. As a result, Recorded Books was entitled to terminate the Agreement.

5.    Recorded Books terminated the license agreement on April 20, 2007 and has instructed NetLibrary not to accept any new subscriptions or renew any present subscriptions for Recorded Books' content after May 31, 2007. NetLibrary has informed Recorded Books—and customers—that it intends to continue to distribute Recorded Books' copyrighted content to new and/or renewed subscribers notwithstanding Recorded Books' express instruction that NetLibrary lacks the authority to do so.

6.    Recorded Books now brings this action against NetLibrary for breach of the Licensing and Distribution Agreement, copyright infringement, and violations of Section 43(a) of the Lanham Act.

## PARTIES

7.      Recorded Books is a limited liability company organized under the laws of Delaware with its principal place of business at 270 Skipjack Road, Prince Frederick, Maryland 20678.

8.      OCLC Online Computer Library Center, Inc. ("OCLC") is an Ohio nonprofit corporation doing business through its NetLibrary division.  OCLC's principal place of business is 6565 Kilgour Place, Dublin, Ohio 43017.  The primary business address of OCLC's NetLibrary division is 4888 Pearl East Circle, Suite 103, Boulder, Colorado 80301.  Because the conduct alleged in this Complaint was engaged in exclusively through OCLC's NetLibrary division, OCLC is referred to herein as "NetLibrary."

## JURISDICTION AND VENUE

9.      The Court has exclusive subject matter jurisdiction over Recorded Books' claims under the Copyright Act, 17 U.S.C. § 501 *et seq.*, pursuant to 28 U.S.C. § 1338.

10.      The Court has subject matter jurisdiction over Recorded Books' claims under the Lanham Act, 15 U.S.C. § 1125, pursuant to 28 U.S.C. § 1331.

11.      The Court has supplemental jurisdiction over Recorded Books' claims for breach of contract pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Recorded Books' claims under federal law that they form the same case or controversy and derive from a common nucleus of operative fact.

12.    NetLibrary has submitted to the jurisdiction of this Court and to venue in this District in the Licensing and Distribution Agreement.  The Agreement provides that "NetLibrary and Recorded Books irrevocably consent to exclusive personal jurisdiction and venue in the state and federal courts located in any state where either party has a principal place of business with respect to any actions, claims or proceedings arising out of or in connection with this Agreement."  Recorded Books, a party to the Agreement, has its principal place of business in the State of Maryland.

13.    NetLibrary is also subject to personal jurisdiction because, upon information and belief, NetLibrary: (a) regularly transacts business within the State of Maryland; (b) contracts to supply goods and/or services within the State of Maryland; and (c) knowingly and/or intentionally caused tortious injury to Recorded Books in the State of Maryland by acts or omissions outside the State while regularly soliciting business and/or engaging in any other persistent course of conduct in the State and/or deriving substantial revenue from goods or services used in the State.

14.    In addition to NetLibrary's consent to venue in this District, venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because NetLibrary resides in this District.

## FACTUAL BACKGROUND

### Licensing and Distribution Agreement

15.     In September 2004, Recorded Books and NetLibrary executed the Agreement for the distribution of Recorded Books' copyrighted materials, including audiobooks.

16.     The Agreement authorizes NetLibrary, *inter alia*, to distribute audiobooks from Recorded Books to subscribing public, school, university, and military base libraries ("Subscribing Libraries") through an Internet-based distribution system called the "NL System."

17.     The NL System provides a method for patrons of Subscribing Libraries to find and download Recorded Books' audiobooks through (a) a co-branded Recorded Books/NetLibrary web site, (b) MARC (MAchine Readable Cataloging) records for audiobook titles loaded in the Subscribing Library's catalog or in OCLC's inter-library catalog, and (c) the Subscribing Library's affiliated NetLibrary web site, if applicable.

18.     The NL System allows patrons of Subscribing Libraries to download a digital audiobook file to their computer or another device that will permit them to listen to the digital file.

19.     The Agreement provides in relevant part for two separate triggers that permit Recorded Books to terminate the Agreement.  If NetLibrary violates the Agreement's exclusivity provision, the Agreement provides that subject to certain requirements for the transition of services following termination, "Recorded Books may give netLibrary written notice terminating this Agreement immediately."  Agreement, Ex. C, § 1(a).

20.    The Agreement also provides that if NetLibrary commits other material breaches of the Agreement, then Recorded Books "may terminate this Agreement at any time after providing the other party with 60 days' prior written notice of the occurrence of . . . [the] violat[ion] [of] any material provision of this Agreement or . . . breaches of this Agreement that, in the aggregate, are material."  Agreement, § 4(b).

### NetLibrary Violated the Exclusivity Provision of the Agreement

21.    Section 1(a) of Exhibit C to the Agreement provides that:

> The Subscription sales model described in this Agreement is the exclusive means by which netLibrary will market, distribute and sell to Recipients digital electronic versions of Audio Books that can be downloaded via the Internet.  The Subscription sales model described in this Agreement is the exclusive means by which Recorded Books will market, distribute and sell to Recipients digital electronic versions of Audio Books that can be downloaded via the Internet.  netLibrary and Recorded Books will allow other content providers to contribute content and to participate in this Subscription sales model on equivalent terms.  If, without Recorded Books' consent, netLibrary signs an Agreement to allow another content provider to contribute Audio Book content and to participate in a Subscription sales model to which Recorded Books is not a party; then, subject to Section 1(e) of Exhibit B, Recorded Books may give netLibrary written notice terminating this Agreement immediately.

22.    On information and belief, NetLibrary has entered into agreements with other content providers that allow those providers to contribute audiobook content and to participate in subscription sales models with NetLibrary.  Recorded books is not a party to these agreements, nor has it consented to NetLibrary entering into them.

23.    In a letter dated April 30, 2007, NetLibrary did not dispute that it has entered into alternate subscription agreements with content providers other than Recorded Books, but stated

that "any actions NetLibrary has taken" with respect to entering into agreements with audiobook content providers other than Recorded Books were justified.

24.     By entering into these agreements with other content providers, NetLibrary has triggered Recorded Books' right to terminate the Agreement immediately pursuant to Section 1(a) of Exhibit C to the Agreement.

## NetLibrary Breached the Technical and Customer Service Requirements of the Agreement

25.     Exhibit B and Schedule B-1 to the Agreement provide technical and customer service requirements for the services that NetLibrary was to provide under the Agreement.

26.     Section 1(d)(i) of Exhibit B to the Agreement requires NetLibrary to provide "[t]he interface and NL System activities reasonably necessary to ensure the site functionality specified in Section 3 and 4 of Schedule B-1" to the Agreement.

27.     Section 3 of Schedule B-1 to the Agreement, titled "Interface," provides in relevant part:

> (a) netLibrary will offer 3 access points from which Patrons of Recipients that purchase the Recorded Books/netLibrary Audio Books offering will be able to discover and download Audio Books.  They will be able to discover and download Audio Books from:
>
> (i) the co-branded netLibrary/Recorded Books site,
>
> (ii) MARC records for Audio Book titles loaded in their library's catalog or in OCLC's WorldCat catalog, and
>
> (iii) their library's affiliated netLibrary site, if applicable.
>
> * * * *

(c) *MARC Records for Audio Books*

netLibrary will provide Recipients that purchase the Recorded
Books/netLibrary Audio Book offering with MARC records for all
Audio Books in the offering at no additional charge.

\* \* \* \*

28.    Section 4 of Schedule B-1 to the Agreement, titled "NL System," provides in

relevant part:

(a) when a Patron clicks the Audio Book Download Link on one of
the Audio Book interfaces, the NL System will perform the
following steps:

(i) the NL System will check out the Audio Book to the Patron for
21 days.

(ii) the NL System will deliver a license to access the Audio Book
for the specified Checkout period to the Patron's computer or other
device.

(iii) (iii) [sic] the NL System will Download the audio book file
from the netLibrary to the Patron's computer or other device one
of two different encoding levels: low band-width (7 Kbps) and
high band-width (37 Kbps).

(b) *DRM Standards* – Recorded Books and netLibrary have agreed
on the following DRM standards.

\* \* \* \*

(ii) DRM will be engaged to restrict the checkout period to 21
days.

\* \* \* \*

29.    Section 1(d)(ii) of Exhibit B to the Agreement requires NetLibrary to provide

"[t]he network and infrastructure activities reasonably necessary to ensure site maintenance and

stability, and to avoid material disruptions in service, including the activities specified in

Section 5 of Schedule B-1" to the Agreement.

30.    Section 5 of Schedule B-1 to the Agreement, titled "Network and Infrastructure,"
provides in relevant part:

> * * * *
>
> (b) Networking/Bandwidth Usage – In the initial phases of this
> project, netLibrary will use existing ISP routers for Audio Book
> File Download traffic.  As Recipients purchase Audio Book
> Subscriptions, bandwidth demand is likely to increase.  netLibrary
> will monitor Audio Book File Download activities and will take
> the steps that are commercially reasonable to ensure that it has
> adequate bandwidth to satisfy expected bandwidth demand.

31.    Section 1(d)(iii) of Exhibit B to the Agreement requires NetLibrary to perform
"[t]he activities reasonably necessary to ensure the performance of order processing, fulfillment,
and customer support functions specified in Section 6 of Schedule B-1" to the Agreement.

32.    Section 6 of Schedule B-1 to the Agreement, titled "Order Processing, Submittal,
Fulfillment, and Customer Support," provides in relevant part:

> * * * *
>
> (iv) Customer Support – NetLibrary will use commercially
> reasonable efforts to provide Customer Support to and will
> serve as the primary point of contact for Recipients that
> purchase Subscriptions to the Bundled Collection(s).
> netLibrary will use existing Customer Support processes to
> perform this obligation.
>
> * * * *

33.    Section 1(d)(v) of Exhibit B to the Agreement requires NetLibrary to provide:

> A reasonable quantity of customer support to Recipients, with said
> support including:
>
> (1) Responding in a timely fashion to Recipients' Support Queries.

(2) Maintaining resources to respond to Recipients' Support
Queries.

(3) Maintaining documentation of netLibrary's responses to
Recipients' Support Queries.

34.     Notwithstanding these requirements, NetLibrary has repeatedly failed to
appropriately index and/or allow Subscribing Libraries access to selected titles reliably or with
reasonable stability.  Complaints regarding these failures have been received from libraries in
Thompson, CT; Scoville, CT; Seneca Falls, NY; Avon Lake, OH; the State of Wyoming;
CLAMS Consortia; as well as from a number of individual library patron customers.  Recorded
Books first notified NetLibrary in writing of these deficiencies in November of 2006, but the
causes of these failures have not been corrected, and complaints were still being received as
recently as March 2007.

35.     NetLibrary has also repeatedly failed to make MARC records—both initial
batches and monthly updates—available to Subscribing Libraries and their patrons for
downloading reliably or with reasonable stability in a timely fashion.  Complaints have been
received from libraries in Mohawk Valley, NY; Fulton County and Atlanta, GA; Capital Area,
PA; Morris County, NJ; Henderson, KY; Beamis, CO; Jackson County, IN; and CLAMS
Consortia.  Recorded Books notified NetLibrary in writing by email of these violations of the
Agreement beginning in December of 2006, but NetLibrary has failed to implement a system
that achieves stable delivery, and complaints were still being received as recently as April 2007.

36.     NetLibrary has failed to implement a streamlined authentication process in
connection with its NL System in response to complaints from library subscribers.  Moreover, in
the course of attempting to address this issue, NetLibrary caused a week-long shutdown of the

NL system in the Iowa City Public Library in January of 2007 that resulted in specific complaints of sub-par customer support.

37.     NetLibrary has failed to address customer concerns and complaints regarding the size of the files transmitted by the NL System, which results in inadequate bookmarking and failure of compatibility with otherwise suitable players.  Recorded Books specifically notified NetLibrary of the need to address this issue during meetings on February 8, 2006, and conveyed the importance of the issue to subscribers at that time.  NetLibrary has failed to correct the problem.

38.     NetLibrary has failed to implement a system that restricts a "Checkout" period (*i.e.*, the period of time during which a patron has access to the copyrighted audiobook) for a recipient to 21 days in violation of Sections 1(a)(1), 4(a)(i), and 4(b)(ii) of Schedule B-1 of the Agreement.  A restricted Checkout period is crucial for protecting the value of Recorded Books' copyrights.  Without restrictions on the Checkout period, instead of lending Recorded Books' copyrighted audiobooks for a limited time period, Subscribing Libraries are permitted to give away an unlimited number of perpetual copies of Recorded Books' copyrighted sound recordings.  NetLibrary has been aware of this failure since soon after the effective date of the Agreement, but has not provided any practical technical method for restricting the Checkout period.

39.     These failures of NetLibrary to comply with the technical and customer service requirements of the Agreement have resulted in ongoing customer complaints and subscriber dissatisfaction with the NetLibrary system and have caused significant commercial harm to Recorded Books.

40.    By failing to correct these breaches for more than 60 days, NetLibrary has triggered Recorded Books' right to terminate the Agreement pursuant to Section 4(b) of the Agreement.

### Recorded Books Terminated the Agreement

41.    Recorded Books terminated the Agreement with NetLibrary through a letter from its counsel, dated April 20, 2007, due to NetLibrary's violations of Sections 1(d)(i), (ii), (iii), and (v) of Exhibit B to the Agreement, Section 3(b) of Schedule B-1 to the Agreement, and Section 1(a) of Exhibit C to the Agreement.

42.    Section 1(e)(iii) of Exhibit B to the Agreement provides in relevant part:

> netLibrary will on the effective date of termination cease selling and marketing Subscriptions to the Bundled Collection(s) but netLibrary may continue to host and distribute copies of NL Electronic Versions of Audio Books contained in the Bundled Collection(s) to Recipients with Subscription Terms that expire after the Termination of the Agreement if netLibrary gives Recorded Books written notice of the identity of these Recipients.

> * * * *

43.    In accordance with this provision, Recorded Books has informed NetLibrary that it will continue to provide content for those NetLibrary subscriptions in effect on or before May 31, 2007, but has informed NetLibrary that NetLibrary is not licensed to enter into any new agreements or to renew existing agreements with Subscribing Libraries to provide content from Recorded Books after May 31, 2007.

44.     Recorded Books continues to provide content to NetLibrary so that NetLibrary may in turn provide it to Subscribing Libraries that have unexpired subscriptions that were commenced on or before May 31, 2007.

45.     In a letter dated April 30, 2007, NetLibrary stated that it "will continue to accept orders from Libraries for the purchase of eAudiobook Subscriptions," notwithstanding Recorded Books' termination of the Agreement.

46.     Recorded Books sent an email to the Subscribing Libraries on May 4, 2007 stating that Recorded Books had terminated its relationship with NetLibrary and that subscriptions for the Recorded Books/NetLibrary service would need to be renewed by May 18, 2007.  In response to requests from Subscribing Libraries, Recorded Books extended the cut off date for new subscriptions and renewals to May 31, 2007.

47.     In reaction to Recorded Books' May 4, 2007 email to Subscribing Libraries, NetLibrary sent an email to the Subscribing Libraries that stated:

> * * * *
>
> Because of the number of eAudiobook Subscriptions that libraries have purchased, Recorded Books and OCLC NetLibrary have satisfied a revenue milestone that automatically extends our agreement from 2007 until 2010.
>
> * * * *
>
> Unfortunately, we understand that the Recorded Books sales force has informally told many libraries that Recorded Books has terminated its agreement with OCLC.  This is incorrect.  We also understand that many libraries were sent an e-mail from Recorded Books management last week stating that all upcoming eAudiobook renewals must be completed by May 18, 2007.  Again, this message is incorrect.  Recorded Books does not have

the right to immediately terminate the agreement, and has not satisfied the agreement's provisions for termination. Consequently, there is no need to accelerate the timing of your subscription renewal.

You will not experience any change in your eAudiobook Subscription as a result of the recent communication from Recorded Books. You will receive access to Recorded Books eAudiobooks for the full term of your eAudiobook Subscription. You may renew your eAudiobook Subscription at your convenience at any time prior to its expiration. You will continue to receive new eAudiobook content as Recorded Books delivers it to NetLibrary.

48.     NetLibrary's email not only stated NetLibrary's intention to sell new subscriptions after May 31, 2007, it also violated the confidentiality provision of the Agreement by revealing the existence of revenue benchmarks in the Agreement. *See* Agreement, § 10.

49.     On information and belief, NetLibrary has or will continue to accept orders from libraries for new subscriptions for Recorded Books' content and to renew existing subscriptions, and to provide Recorded Books' copyrighted content to new subscribers and/or subscribers with renewed subscriptions, notwithstanding that NetLibrary is no longer licensed to provide Recorded Books' copyrighted works to new or renewed subscribers after May 31, 2007.

50.     In its letter dated April 30, 2007, NetLibrary stated that it did not consider Recorded Books' termination of the Agreement to be valid and that if Recorded Books would not rescind its termination of the Agreement, "then OCLC and NetLibrary will hold Recorded Books responsible for all the damages that they incur as a result of this wrongful termination."

## COUNT I – BREACH OF CONTRACT

51.     Recorded Books repeats and realleges the allegations set forth in paragraphs 1-50 as if fully set forth herein.

52.     The Agreement was duly executed by Recorded Books and NetLibrary and supported by consideration.

53.     Recorded Books has performed its obligations under the Agreement.

54.     As stated above at paragraphs 21-40, NetLibrary materially breached the Agreement, including through violations of Sections 1(d)(i), (ii), (iii), and (v) of Exhibit B to the Agreement, Section 3(b) of Schedule B-1 to the Agreement and Section 1(a) of Exhibit C to the Agreement.

55.     Recorded Books has lawfully terminated the Agreement.

56.     In a letter dated April 30, 2007, NetLibrary stated that it "will continue to accept orders from Libraries for the purchase of eAudiobook Subscriptions," notwithstanding Recorded Books' termination of the Agreement.

57.     NetLibrary has stated its intention to sell new subscriptions after May 31, 2007 in email correspondence with Subscribing Libraries.

58.     On information and belief, NetLibrary has or will continue to accept orders from libraries for new subscriptions for Recorded Books' content and to renew existing subscriptions,

and to provide Recorded Books' copyrighted content to new subscribers and/or subscribers with renewed subscriptions, notwithstanding that NetLibrary is no longer licensed to provide Recorded Books' copyrighted works to new or renewed subscribers.

59.     NetLibrary's actions breach the requirement that it "will on the effective date of termination cease selling and marketing Subscriptions." Agreement, Ex. B, § 1(e)(iii).

60.     Recorded Books has been damaged and continues to be damaged by NetLibrary's breach in an amount to be determined at trial.

## COUNT II – DECLARATORY JUDGMENT/BREACH OF CONTRACT
### (28 U.S.C. §§ 2201 and 2202, New York contract law)

61.     Recorded Books repeats and realleges the allegations set forth in paragraphs 1-60 as if fully set forth herein.

62.     The Agreement was duly executed by Recorded Books and NetLibrary and supported by consideration.

63.     Recorded Books has performed its obligations under the Agreement.

64.     As stated above at paragraphs 21-40, NetLibrary materially breached the Agreement, including through violations of Sections 1(d)(i), (ii), (iii), and (v) of Exhibit B to the Agreement, Section 3(b) of Schedule B-1 to the Agreement and Section 1(a) of Exhibit C to the Agreement.

65.     Recorded Books has lawfully terminated the Agreement.

66.    NetLibrary has rejected Recorded Books' termination of the Agreement, and has stated in a letter dated April 30, 2007 that "OCLC and NetLibrary will hold Recorded Books responsible for all damages that they incur as a result" of the termination.

67.    NetLibrary has stated its intention to sell new subscriptions after May 31, 2007 in email correspondence with Subscribing Libraries.

68.    There is an actual controversy between the parties, suitable for declaratory relief regarding, *inter alia*, the effectiveness and validity of Recorded Books' April 20, 2007 termination of the Agreement. Recorded Books desires a judicial determination and declaration that its April 20, 2007 termination of the Agreement was valid and effective and that NetLibrary is not entitled to damages arising from that termination.

## COUNT III – COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 106, 501 and 502)

69.    Recorded Books repeats and realleges the allegations set forth in paragraphs 1-68 as if fully set forth herein.

70.    Since the Agreement was executed, Recorded Books has provided nearly 2000 works of audiobooks to NetLibrary, which in turn has distributed them to Subscribing Libraries and their patrons pursuant to the Agreement.

71.    Recorded Books is the legal or beneficial owner of copyrights in recorded works it has provided to NetLibrary, which have been registered with the United States Copyright Office. A nonexclusive list of the titles and federal registration numbers of works that Recorded Books has provided to NetLibrary are listed in the attached Exhibit A.

72.    NetLibrary stated in a letter to Recorded Books dated April 30, 2007 that it will continue to distribute Recorded Books' copyrighted works to new subscribers, notwithstanding Recorded Books' termination of the Agreement.

73.    NetLibrary has stated its intention to sell new subscriptions after May 31, 2007 in email correspondence with Subscribing Libraries.

74.    NetLibrary is not licensed to provide Recorded Books' content to libraries after the date on which Recorded Books terminated the Agreement (other than those libraries with unexpired subscriptions that were initiated on or before May 31, 2007).

75.    On information and belief, NetLibrary is or will be doing so and is therefore directly and/or vicariously and/or contributorily infringing the exclusive rights of Recorded Books under the Copyright Act, 17 U.S.C. §§ 106(1), (3), and (6) and 501.

76.    NetLibrary's infringing conduct is willful within the meaning of the Copyright Act.

77.    NetLibrary's actions in reproducing, distributing, and publicly performing Recorded Books' copyrighted works without a license is causing, and unless enjoined and restrained by the Court, will continue to cause irreparable harm to Recorded Books, which has no adequate remedy at law.

## COUNT IV – DECLARATORY JUDGMENT/COPYRIGHT INFRINGEMENT

(28 U.S.C. §§ 2201 and 2202, 17 U.S.C. §§ 106 and 502)

78.     Recorded Books repeats and realleges the allegations set forth in paragraphs 1-77 as if fully set forth herein.

79.     Since the Agreement was executed, Recorded Books has provided nearly 2000 works of audiobooks to NetLibrary, which in turn has distributed them to Subscribing Libraries and their patrons pursuant to the Agreement.

80.     Recorded Books is the legal or beneficial owner of copyrights in recorded works it has provided to NetLibrary, which have been registered with the United States Copyright Office.  A nonexclusive list of the titles and federal registration numbers of works that Recorded Books has provided to NetLibrary are listed in the attached Exhibit A.

81.     NetLibrary is not licensed to provide Recorded Books' content to libraries after the date on which Recorded Books terminated the Agreement (other than those libraries with unexpired subscriptions that were initiated on or before May 31, 2007).

82.     NetLibrary stated in a letter to Recorded Books dated April 30, 2007 that it will continue to distribute Recorded Books' copyrighted works to new subscribers, notwithstanding Recorded Books' termination of the Agreement.

83.     NetLibrary has stated its intention to sell new subscriptions after May 31, 2007 in email correspondence with Subscribing Libraries.

84.    By doing so, NetLibrary will directly and/or vicariously and/or contributorily infringe the exclusive rights of Recorded Books under the Copyright Act, 17 U.S.C. §§ 106(1), (3), and (6) and 501.

85.    There is an actual controversy between the parties, suitable for declaratory relief regarding, *inter alia*, whether NetLibrary will infringe Recorded Books' exclusive rights under the Copyright Act, 17 U.S.C. §§ 106(1), (3), and (6), by providing Recorded Books' copyrighted works to new subscribers, notwithstanding Recorded Books' termination of the Agreement.

86.    NetLibrary's actions in reproducing, distributing, and publicly performing Recorded Books' copyrighted works without a license, unless enjoined and restrained by the Court, will cause irreparable harm to Recorded Books, which has no adequate remedy at law.

## COUNT V – LANHAM ACT SECTION 43(a)
### (15 U.S.C. § 1125(a))

87.    Recorded Books repeats and realleges the allegations set forth in paragraphs 1-86 as if fully set forth herein.

88.    Recorded Books lawfully terminated the Agreement with NetLibrary by letter dated April 20, 2007.

89.    NetLibrary is not licensed or authorized to sell subscriptions to Recorded Books' content after May 31, 2007.

90.     NetLibrary stated in a letter to Recorded Books dated April 30, 2007 that it does not consider the Agreement to have been terminated and that it will continue to distribute Recorded Books' copyrighted works to new subscribers, notwithstanding Recorded Books' termination of the Agreement.

91.     NetLibrary has stated its intention to sell new subscriptions after May 31, 2007 in email correspondence with Subscribing Libraries.

92.     On information and belief, NetLibrary has or will market and sell audiobook subscriptions by representing in commerce that it is authorized to provide Recorded Books' content.

93.     NetLibrary's representations that it is authorized to sell audiobook subscriptions containing Recorded Books' content constitute false and misleading representations and/or descriptions of fact that are likely to cause consumer confusion and mistake and/or to deceive consumers as to Recorded Books' affiliation, connection, association, origin, sponsorship or approval of NetLibrary's audiobook subscription service.

94.     On information and belief, as a direct and proximate result of their wrongful conduct, NetLibrary has or will realize profits and other benefits rightfully belonging to Recorded Books.

95.     NetLibrary's conduct is or will cause, and will continue to cause, Recorded Books to suffer irreparable harm and, unless NetLibrary is restrained, Recorded Books will continue to be so damaged, because it has no adequate remedy at law.

## COUNT VI – DECLARATORY JUDGMENT/LANHAM ACT SECTION 43(a)

### (28 U.S.C. §§ 2201 and 2202 and 15 U.S.C. § 1125(a))

96.     Recorded Books repeats and realleges the allegations set forth in paragraphs 1-95 as if fully set forth herein.

97.     Recorded Books lawfully terminated the Agreement with NetLibrary by letter dated April 20, 2007.

98.     NetLibrary is not licensed or authorized to sell subscriptions to Recorded Books' content after May 31, 2007.

99.     NetLibrary stated in a letter to Recorded Books dated April 30, 2007 that it does not consider the Agreement to have been terminated and that it will continue to distribute Recorded Books' copyrighted works to new subscribers, notwithstanding Recorded Books' termination of the Agreement.

100.    NetLibrary has stated its intention to sell new subscriptions after May 31, 2007 in email correspondence with Subscribing Libraries.

101.    On information and belief, NetLibrary intends to continue to market and sell audiobook subscriptions by representing in commerce that it is authorized to provide Recorded Books' content.

102.    NetLibrary's representations that it is authorized to sell audiobook subscriptions containing Recorded Books' content will constitute false and misleading representations and/or descriptions of fact that are likely to cause consumer confusion and mistake and/or to deceive

consumers as to Recorded Books' affiliation, connection, association, origin, sponsorship or approval of NetLibrary's audiobook subscription service.

103.    There is an actual controversy between the parties, suitable for declaratory relief regarding, *inter alia*, whether NetLibrary's continued offering of subscriptions that contain Recorded Books' content constitutes false advertising under Lanham Act Section 43(a).

104.    NetLibrary's conduct will cause Recorded Books to suffer irreparable harm and, unless NetLibrary is restrained, Recorded Books will continue to be so damaged, because it has no adequate remedy at law.

## JURY DEMAND

Plaintiff hereby demands, pursuant to Federal Rule of Civil Procedure 38(b), a trial by jury on all counts and issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Recorded Books respectfully requests that this Court grant the following relief against Defendant NetLibrary:

A.    Enter an Order pursuant to 28 U.S.C. § 2201, declaring that Recorded Books' termination of the Agreement with NetLibrary, by letter dated April 20, 2007, was valid and effective as of that date, and that NetLibrary is not entitled to any damages arising from the termination of the Agreement;

B.    Enter an Order pursuant to 28 U.S.C. § 2201, declaring that NetLibrary will violate the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (6) directly, contributorily and/or vicariously by providing Recorded Books' copyrighted works to subscribers whose subscriptions were initiated or renewed after May 31, 2007;

C.    Enter a preliminary and permanent injunction preventing NetLibrary from providing, distributing, transmitting, reproducing or performing Recorded Books' copyrighted works to new or renewed subscribers;

D.   Enter an Order pursuant to 28 U.S.C. § 2201, declaring that NetLibrary will violate Lanham Act Section 43(a) by stating or representing that it is authorized to sell or provide audiobook subscriptions containing Recorded Books' content to new or renewed subscribers after May 31, 2007;

E.   Enter a preliminary and permanent injunction preventing NetLibrary from stating or representing that it is authorized to sell or provide audiobook subscriptions containing Recorded Books' content to new or renewed subscribers after May 31, 2007;

F.   Award Recorded Books actual and compensatory damages;

G.   Award Recorded Books punitive and exemplary damages;

H.   Award Recorded Books statutory damages, where permitted by law;

I.   Award Recorded Books enhanced damages for willful infringement of its copyrights;

J.   Award Recorded Books the costs and expenses of this action;

K.   Award Recorded Books attorneys' fees;

L.   Award Recorded Books prejudgment interest;

M.   Award Recorded Books such other and further relief as this Court deems just and proper.

Dated:  May 31, 2007

Respectfully submitted,

RECORDED BOOKS, LLC

By its attorneys,

*David L. Permut*

David L. Permut (15111)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
202.346.4000 (tel.)
202.346.4444 (fax)

*Of Counsel:*

R. David Hosp
Jaren D. Wilcoxson
Robert D. Carroll
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
617.570.1000 (tel.)
617.523.1231 (fax)