IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
RECORDED BOOKS, LLC,  :  Civil Action No. 8:07-cv-01427-DKC
:
Plaintiff,  :
:
v.  :  **MEMORANDUM IN SUPPORT OF**
:  **RECORDED BOOKS, LLC'S**
OCLC ONLINE COMPUTER LIBRARY  :  **MOTION FOR MORE**
CENTER, INC. d/b/a NETLIBRARY,  :  **DEFINITE STATEMENT**
:
Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Recorded Books, LLC ("Recorded Books") hereby submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 12(e), for a more definite statement of the alleged statements by Recorded Books that serve as a basis for Counts V through IX of NetLibrary's Counterclaims.[1]

## BACKGROUND FACTS AND NETLIBRARY'S ALLEGATIONS

### I.   NetLibrary's Vague Allegations of Injurious Statements Are the Basis for All of Its Non-Contract Claims.

All five of NetLibrary's non-contract Counterclaims (Defamation (Count V), Disparagement (Count VI), Tortious Interference With Prospective Economic Advantage (Count VII), Unfair Competition (Count VIII), and violations of the Colorado Consumer Protection Act

---

[1]  Pursuant to Rule 12(a)(4), Recorded Books will serve a Reply to NetLibrary's Counterclaims "within 10 days after notice of the court's action" on this motion, or "within 10 days after service of the more definite statement." Fed. R. Civ. P. 12(a)(4); *see also* 5C Charles Alan Wright & Arthur A. Miller, *Federal Prac. & Proc. Civ. 3d* § 1378 (2004 & Supp. 2007) ("The pendency of a motion for a more definite statement postpones the movant's obligation to file his responsive pleading."); *Becker v. Fitzgerald*, 1995 WL 215413, at *2-3 (N.D. Ill. Apr. 10, 1995) ("If a motion for more definite statement has been served and made, the defendant's single answer is to be made after the ruling on the motion . . . Since defendant . . . filed a motion for more definite statement, it should not have answered the complaint until after that motion was ruled upon."; striking answer filed with motion for more definite statement).

(Count IX)) rely in whole or in part, on statements allegedly made by Recorded Books.[2] NetLibrary's 126-paragraph Counterclaims devote only three vague paragraphs (one of them repeated twice) to the alleged statements by Recorded Books that serve as a basis for the majority of its claims.

      Paragraph 61 of the Counterclaims alleges:

> Since April 20, 2007, Recorded Books has contacted numerous NetLibrary customers and falsely informed them that NetLibrary materially violated the Agreement.

      Paragraph 64 of the Counterclaims alleges:

> Upon information and belief, Recorded Books has also contacted libraries that NetLibrary supports, informing them that the Agreement has been terminated and that NetLibrary will no longer be able to provide them with the kind of e-audiobook content they have come to expect.

      Paragraph 92 of the Counterclaims (which is repeated verbatim at paragraph 101) alleges:

> Recorded Books has caused to be published to third parties false statements regarding NetLibrary's business. These false statements include, but are not limited to, statements that (1) NetLibrary unlawfully and materially breached its Agreement with Recorded Books, (2) NetLibrary could no longer sell e-audiobook Subscriptions, (3) Recorded Books no longer owed any obligations to provide e-audiobook content to libraries placing orders through NetLibrary after May 31, 2007, and (4) that NetLibrary would no longer be able to deliver content to libraries for orders placed after May 31, 2007.

      There are no other allegations in the Counterclaims concerning the alleged statements that form the basis for the majority of NetLibrary's claims.

---

[2] *See* Counterclaims ¶¶ 92-98 (Defamation – Count V); ¶¶ 100-105 (Disparagement – Count VI); ¶ 108 (Tortious Interference With Prospective Economic Advantage – Count VII); ¶¶ 115-16, 118 (Unfair Competition – Count VIII); ¶ 122 (Colorado Consumer Protection Act – Count IX).

## II. Recorded Books' Actual Statements to Customers Concerning the Termination of its Relationship with NetLibrary

Brian Downing, Recorded Books' publisher, sent a single e-mail to the subscribers of the Recorded Books/NetLibrary e-audiobook subscription service (the "Subscribing Libraries") on May 4, 2007, to inform them that Recorded Books was ending its relationship with NetLibrary. That e-mail read:

> Dear Valued Customer,
>
> I am writing to inform you that Recorded Books is ending its relationship with NetLibrary on a going forward basis.
>
> For those customers in an agreement, whether it is one year or multi-year, nothing will change. Recorded Books will continue to provide customer support as in the past. We will also continue to refresh your collection with great new content every month. You should not see a single difference in the service you have been offering. Your agreement will go on as scheduled, and end as scheduled at the end of your subscription term.
>
> For those customers wishing to renew, please do so by May 18th, 2007. Please contact us if for some reason you cannot meet that date.
>
> After a cut off date of May 18th or otherwise agreed to, it will not be possible to renew the present service. Obviously the marketplace offers you choices – now with NetLibrary, and at some point in the future with Recorded Books. It just won't be together.
>
> Please contact me with any questions or comments.
>
> Very best,
>
> Brian T. Downing
> V.P., Publisher
> Recorded Books, LLC
> bdowning@recordedbooks.com

Declaration of Brian T. Downing in Support of Recorded Books, LLC's Motion for More Definite Statement, dated July 12, 2007 ("Downing Dec."), Exhibit B. In response to inquiries

3

and requests from the Subscribing Libraries, Recorded Books extended the cut off date for new subscriptions and renewals to May 31, 2007. *Id.* ¶ 10.

Before sending the e-mail to Subscribing Libraries, Mr. Downing sent a memorandum to all of Recorded Books' sales representatives and customer service personnel concerning NetLibrary. *Id.* ¶ 4.

The memorandum provided the following specific directions for Recorded Books' sales representatives and customer services personnel to follow when informing customers that Recorded Books had ended its relationship with NetLibrary:

> Recorded Books has ended its relationship with NetLibrary. If the customer wishes to proceed with the existing contract process, we will submit it to NetLibrary and honor it if NetLibrary accepts it. It is however, not completely within our control. We apologize in advance for any inconvenience. (PLEASE NOTE: Stick to that script and leave the decision to the customer).

Downing Dec., Exhibit A.

The memorandum also instructed the Recorded Books sales representatives and customer service personnel that they should:

> Speak no ill. The NetLibrary relationship was very important to Recorded Books over the past few years and it allowed us to be pioneers in a new digital age. Both organizations have expressed a desire to head in a different direction, and now we are doing that. We wish NetLibrary well. If a customer does express anything negative you should express sympathy, but not say anything to disparage NetLibrary in any way.

*Id.*, Exhibit A. Recorded Books' management specifically instructed its sales representatives not to make any negative statements concerning NetLibrary to Subscribing Libraries, and is unaware of any such statements. *Id.* ¶¶ 6-7, 11. Recorded Books' management is unaware of any instance in which any Recorded Books employee or representative communicated any alternative message to any Subscribing Library—nor does it believe that any such instance occurred. *Id.*

4

## **ARGUMENT**

Recorded Books moves for an order for a more definite statement, pursuant to Fed. R. Civ. P. 12(e), to require NetLibrary to allege the following with respect to the statements it alleges as a basis for all five of the non-contract claims (Counts V through IX) in its Counterclaims:

(a) By whom each alleged statement was made;

(b) To whom each alleged statement was made;

(c) The time, place, and manner of publication of each alleged statement; and

(d) The substance of each alleged statement.

**I.   NetLibrary Must State the Communicator, Recipient, Time, Place, and Manner of Publication, and Substance of the Alleged Statements.**

Rule 12(e) of the Federal Rules of Civil Procedure provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e).

The degree of specificity required to plead statement-based tort claims, such as defamation and disparagement, is a procedural matter governed by federal procedural law. *E.g.*, *Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005); *Esancy v. Quinn*, 2005 WL 1806413 (W.D.N.C. July 21, 2005).

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and that "[e]ach averment of a pleading shall be simple, concise, and direct," *id.* at 8(e). "[I]n the context of a defamation claim, Fed. R. Civ. P. 8 requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself."

5

*McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989); *see also Esancy*, 2005 WL 1806413 (Rule 8 requires that allegations of defamation "provide fair notice to the opposing party" with "sufficient detail of what the claim is and the grounds upon which it rests").

"[C]ountless district courts have found that the requirements of Rule 8 have not been met in cases where libel and slander claims failed to allege the substance of the statements[,] . . . the time and place in which they were made," *PAI Corp. v. Integrated Science Solutions, Inc.*, 2007 WL 1229329, at *8 (N.D. Cal. Apr. 25, 2007) (citing cases), "the communicator of the [allegedly defamatory] words," *Heckman v. Zurich Holding Co. of Am.*, 2007 WL 677607, at *5 (D. Kan. Feb. 28, 2007), and/or the "recipient" of the allegedly defamatory statements, *Esancy*, 2005 WL 1806413.

As explained below, NetLibrary's general allegations of actionable statements fail to meet each of these requirements. NetLibrary should therefore be required to provide more definite allegations of the statements that serve as a basis for all five of its non-contract claims.[3]

### A. NetLibrary Fails to State Who Made the Alleged Statement(s).

NetLibrary's vague and ambiguous allegations that the corporate entity, "Recorded Books," made statements or "caused [statements] to be published to third parties" are insufficient under Rules 8 and 12(e), and NetLibrary should be ordered to replead, naming the individuals who made the allegedly actionable statements. Counterclaims ¶¶ 61, 64, 92, 101.

---

[3] Recorded Books acknowledges that the pleading requirements for claims of defamation and disparagement are governed by Fed. R. Civ. P. 8, not the special pleading requirements of Fed. R. Civ. P. 9. Nonetheless, Rules 8 and 12(e) require that a defendant receive fair notice of the bases for the claims against it. As discussed in this memorandum, numerous courts have held that fair notice under Rule 8 for statement-based tort claims requires sufficient information concerning the speaker, the recipient, the time, place, and manner of publication, and the substance of the statements, so that the defendant will be able to identify the statements alleged as the basis of the claims and prepare an adequate response to the pleading.

6

Numerous courts have held that allegations of defamation where the speaker is not specifically named provide insufficient notice to the defendant to meet the requirements of Rule 8, and have therefore granted motions for more definite statements or motions to dismiss. *E.g.*, *PAI Corp.*, 2007 WL 1229329, at *9 (granting motion for more definite statement of defamation claim, because the claim, *inter alia*, "failed to specifically identify who made the statements"); *Heckman*, 2007 WL 677607, at *5 ("To sufficiently plead her defamation claim [under Rule 8(a)], plaintiff must set forth in her complaint, [*inter alia*], the allegedly defamatory words [and] *the communicator of those words* . . . .") (emphasis added); *Ahmed v. Gelfland*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. 2001) (holding that Rule 8(a) requires that a party pleading defamation "state . . . who made the communication"); *Tiernan v. Fujitsu Imaging Sys. of Am. Inc.*, 1989 WL 91879, at *3 (N.D. Ill. Aug. 9, 1989) (Rule 8(a) requires a plaintiff to "specify a speaker of the allegedly slanderous statements"); *Campbell v. Bd. of Supervisors of Charlotte County*, 553 F. Supp. 644, 646 (E.D. Va. 1982) ("As to Counts IV and V, statutory and common law defamation, . . . [t]he Court DIRECTS the plaintiffs to submit within 10 days of the entry hereof a more definite statement of 1) the words spoken, *who spoke them*, and to whom they were spoken, and 2) when and where they were spoken.") (emphasis added).

Recent cases make clear that general allegations that a corporation made the actionable statements, such as NetLibrary's statements that "Recorded Books has contacted numerous NetLibrary customers," Counterclaims ¶ 61, or that "[u]pon information and belief, Recorded Books has also contacted libraries that NetLibrary supports," *id.* ¶ 64, fail to give Recorded Books adequate notice to be able to defend itself. NetLibrary's even less specific allegations that Recorded Books (and not an individual) has "caused to be published to third parties false statements," *id.* ¶¶ 92, 101, fall even farther short of meeting the notice requirements of Rule 8.

7

For example, in *Heckman*, the plaintiff alleged that she was defamed when her former employer, Universal Underwriters Group ("UUG"), sent an e-mail to its employees about plaintiff. The court stated that a general allegation that the corporate entity, "UUG," sent a defamatory e-mail provided insufficient notice to defendant to comply with Rule 8. The Court held that the allegation "that 'UUG sent an email' is insufficient to identify the communicator of the alleged defamatory words such that defendants may defend the claim." 2007 WL 677697, at *6 & n.11.

Similarly, in *PAI Corp.*, the court granted a motion for a more definite statement, holding that counterclaimant "failed to specifically identify who made the statements" when the complaint alleged that the corporation, "PAI," had published the actionable statements. 2007 WL 1229329, at *9; *see also Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1287 (D. Kan. 1997) (holding that allegation that "ITT [Corporation], its distributors and employees made the [allegedly defamatory] statements" did "not identify with necessary specificity who made the statements" and dismissing claim with leave to replead).

NetLibrary's allegations that "upon information and belief . . . Recorded Books" made statements to libraries or, even more ambiguously, that Recorded Books "caused to be made statements," provide woefully inadequate notice of the allegedly defamatory words such that Recorded Books cannot reasonably frame a response. Counterclaims ¶¶ 61, 64, 92, 101.

**B.     NetLibrary Fails to State the Recipients of the Alleged Statement(s).**

NetLibrary's complaint fails to state *to whom* the alleged statements were made. NetLibrary's allegations in its claims for defamation and disparagement state only that "Recorded Books has caused to be published *to third parties* false statements regarding NetLibrary's business." Counterclaims ¶¶ 92, 101 (emphasis added). In its general allegations, NetLibrary states that "[u]pon information and belief, Recorded Books has . . . contacted

8

*libraries that NetLibrary supports*" or "*NetLibrary customers.*" *Id.* ¶¶ 61, 64 (emphasis added). None of these allegations provides sufficient notice of the recipients of the alleged statements.

To satisfy Rules 8 and 12(e), an allegation of defamation must plead the "recipient" of the statement in order for the defendant to be "[]able to respond to the[] allegations." *Esancy*, 2005 WL 1806413; *see also, e.g.*, *Tsimpedes v. Martin*, 2006 WL 2222393 (E.D. Va. Aug. 2, 2006) (granting motion for more definite statement; "[T]here is no indication whatsoever as to dates, *recipients* or contents of the other communications.") (emphasis added); *Campbell*, 553 F. Supp. at 646 (ordering plaintiff to provide more definite statement of, *inter alia*, "to whom [the allegedly defamatory words] were spoken").

NetLibrary's contentless allegation that "Recorded Books has caused to be published to third parties false statements" provides no information about the recipients of the statements alleged in paragraphs 92 and 101 of the Counterclaims. Those allegations fail on their face to provide *any information* as to whom the recipients of the statements are alleged to be, and must be repleaded.

NetLibrary's allegation that "Recorded Books has contacted numerous NetLibrary customers," Counterclaims ¶ 61, and that "[u]pon information and belief, Recorded Books has also contacted libraries that NetLibrary supports, informing them that the Agreement has been terminated," *id.* ¶ 64, also fail to give Recorded Books sufficient information to frame a responsive pleading.[4] Allegations that a defamatory statement was made to a general group, such as a company's "customers" (as NetLibrary alleges here), "employees," "top-level . . . executives," "distributors," "regulators," or "the industry in general," are insufficient to provide

---

[4] As noted above, Recorded Books is aware of the May 4, 2007 e-mail that Mr. Downing sent to the Subscribing Libraries. The Counterclaims are unclear, however, whether they refer to the May 4 e-mail or to other purported communications.

9

adequate notice for the purpose of Rules 8 and 12(e). *Heckman*, 2007 WL 677607, at *6 (allegation that statements were made to company's "top-level/supervisory executives" and "various insurance regulators for various states and others in the insurance industry" provided insufficient notice under Rule 8); *Bushnell Corp.*, 973 F. Supp. at 1287 (allegation that statements were made to the plaintiff's "customers and the industry in general" did "not provide adequate details about the alleged defamation to enable defendant to defend the allegation"); *Weeks v. Distinctive Appliance Corp.*, 1985 WL 3536, at *4 (N.D. Ill. Oct. 24, 1985) ("[W]e do not think that an allegation that [Defendant], through its agents and employees, made untrue statements 'to individuals, including distributors Plaintiffs had recruited' is at all sufficient to inform Defendants as to when, where or to whom the statements were made.").

As NetLibrary has pointed out, the Recorded Books/NetLibrary eAudiobooks program has served more than 1700 libraries. Counterclaims ¶ 36. Therefore, allegations that Recorded Books made a statement or statements to "libraries that NetLibrary supports" or "NetLibrary customers" serve only to narrow the field of potential recipients to more than 1700 entities (most with multiple employees). *Id.* ¶¶ 61, 64. NetLibrary should be ordered to replead, alleging which statements were made to which person at which of the more than 1700 libraries involved.

### C. NetLibrary Fails to State the Time, Place, and Manner of Publication of the Alleged Statement(s).

NetLibrary's Counterclaims contain no information concerning the time, place, or manner of publication (*e.g.*, by e-mail, fax, or letter) of the alleged statements. In order to satisfy Rules 8 and 12(e), allegations of defamatory or disparaging statements must provide information on the time, place, and manner of publication of each alleged statement sufficient to identify the statement. *E.g., Holt v. Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999) (ordering more specific pleading of defamation claim because "complaint . . . fails to indicate what precisely was

republished or *where and when the alleged republishing occurred*"); *Esancy*, 2005 WL 1806413 (applying Rule 8(a) standard; Plaintiff "never identifie[d] the statements by *content, date, manner or recipient*" and the "vague descriptions provided no notice to Defendant as to the basis of Plaintiff's claim of defamation, and, as a result . . . Defendant is unable to respond to these allegations") (emphasis added); *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1341 (M.D. Fla. 2003) ("A slander claim may suffice [under Rule 8] if it sets forth the allegedly slanderous statement and generally *describes the manner* and to whom it was uttered.") (emphasis added); *Dobkin v. Johns Hopkins Univ.*, 1994 WL 146760, at *9 (D. Md. Jan. 25, 1994) ("[A]bsent any specification of the *time, place or content of such alleged comments*, even under liberal [Rule 8] pleading requirements, [the allegations] fail to state a claim for defamation."; dismissing defamation claim with leave to amend); *Campbell*, 553 F. Supp. at 646 ("As to Counts IV and V, statutory and common law defamation, . . . [t]he Court DIRECTS the plaintiffs to submit within 10 days of the entry hereof a more definite statement of 1) the words spoken, who spoke them, and to whom they were spoken, and 2) *when and where they were spoken*.") (emphasis added).

Without information concerning the time, place, and manner of publication of each of the alleged statements, Recorded Library has no way of knowing which statements NetLibrary's complaint refers to, and no way of defending itself in a responsive pleading.

### D.   NetLibrary Fails to State the Substance of Each Alleged Statement.

In order to satisfy the notice requirements of Rule 8, a party must allege the substance of each allegedly defamatory statement. While in many circumstances, a party in federal court need not set forth the allegedly defamatory statements word for word, he or she must at least allege the substance of the communication. *E.g.*, *Johnson v. Lantz*, 2002 WL 1821610, at *1 (W.D. Va. Aug. 8, 2002) ("The federal rules contemplate notice pleading. *See* Fed. R. Civ. P. 8(a). Nevertheless, it has been held that in a defamation action, a complaint ought to specify the

11

defamatory statements, even under the liberal federal pleading regime."; granting motion for more definite statement); *Holt v. Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999) (ordering more specific pleading of defamation claim because the "complaint . . . fails to indicate *what precisely was republished*") (emphasis added).

NetLibrary's allegations fail to meet the requirements of Rule 8 because they do not set forth the substance of *each* alleged statement. NetLibrary alleges that "Recorded Books has caused to be published to third parties false statements." NetLibrary alleges what it states is a non-exhaustive list of categories of the substance of the statements. Counterclaims ¶¶ 92, 101 ("These false statements *include, but are not limited to,* statements that . . . .") (emphasis added). These allegations fail to meet the notice requirements of Rule 8 for two reasons. First, they do not purport to set forth the entirety of the substance of the actionable statements. Second, they fail to identify the specific statements upon which the Counterclaims rely and leave open the possibility that NetLibrary is relying on statements outside of those alluded to in the Counterclaims. Given the open-ended pleading, there is simply no way to tell which statements NetLibrary is attempting to describe. Such open-ended pleading concerning the substance of the allegedly defamatory statements fails to meet the notice requirements of Rule 8. *Tsimpedes v. Martin*, 2006 WL 2222393 (E.D. Va. Aug. 2, 2006) (granting motion for more definite statement; "[T]he complaint itself is unclear as to whether [Plaintiff] alleges more than one incident of defamation. If [Plaintiff's] defamation claim is based on other incidents, there is no indication whatsoever as to dates, recipients or *contents of the other communications*. To give [Defendant] notice of the claims against him, the Court will grant his motion for more definite statement.") (emphasis added); *see also Celli v. Shoell*, 995 F. Supp. 1337, 1345-46 (D. Utah 1998) (holding that plaintiff's open-ended allegation of multiple "defamatory statements, both

written and oral, over the last four years" was insufficient to meet the notice requirements of Rule 8 because it failed to identify the "specific defamatory statements made by the defendants," leaving defendants unable to "formulate a responsive pleading"). NetLibrary should be required to plead the substance of *each* statement it alleges to be actionable.

**II.     Based on NetLibrary's General Allegations, Recorded Books Is Unable to Frame a Responsive Pleading Because There is No Way to Tell Which Statements Are Alleged to be Actionable.**

The mismatch between NetLibrary's allegations of defamatory and disparaging statements and the facts concerning the limited statements that Recorded Books has made to all the Subscribing Libraries concerning the conclusion of its service with NetLibrary underscores the need for details that identify the statements on which NetLibrary relies. As discussed above, the announcement that Recorded Books made to the Subscribing Libraries concerning the end of its relationship with NetLibrary was straightforward. It stated that "Recorded Books is ending its relationship with NetLibrary on a going forward basis," and explained that customers may renew their subscription by May 18, 2007 (a date later extended to May 31, 2007), or simply let their subscription expire as already scheduled. That communication (which is set forth in full above and attached to the Downing Declaration as Exhibit B) obviously makes no statements that "NetLibrary unlawfully and materially breached its Agreement with Recorded Books." Counterclaims ¶¶ 92, 101. Nor does it state that "NetLibrary materially violated the Agreement." *Id.* ¶ 61. Indeed, it says nothing about why the relationship ended; the letter simply accurately stated that Recorded Books was ending its relationship with NetLibrary.

As discussed above, Recorded Books instructed its sales representatives to make no statements to customers concerning the termination of the Recorded Books/NetLibrary relationship (other than that "Recorded Books ha[d] ended its relationship with NetLibrary"), and specifically to "speak no ill" of NetLibrary. Downing Dec. ¶¶ 6-7 & Exhibit A. Recorded

13

Books management is aware of no statements that are contradictory to this instruction. *Id.* ¶ 11. It is therefore unclear on which statement or statements the Counterclaims rely. If the Counterclaims refer to Mr. Downing's May 4, 2007 e-mail, they should state that. If the Counterclaims refer to other statements as well, they should give adequate notice of those statements by providing allegations concerning who made the statements, to whom they were made, the time, place, and manner of publication of the statements, and the substance of each statement. Moreover, from the manner of NetLibrary's pleading, it appears that the alleged false (though unidentified) statements provide the basis not only of NetLibrary's defamation and disparagement claims, but also for its claims for tortious interference with prospective economic advantage, unfair competition, and violations of the Colorado Consumer Protection Act. Thus, without more detailed allegations concerning the statements, it is impossible for Recorded Books to frame a responsive pleading.

## **CONCLUSION**

For the foregoing reasons, Recorded Books respectfully requests that this Court grant its motion for a more definite statement, pursuant to Fed. R. Civ. P. 12(e), according to the terms more specifically set out in the accompanying proposed Order.

Dated:  July 12, 2007                                         Respectfully submitted,

RECORDED BOOKS, LLC

By its attorneys,

/s/ R. David Hosp
David L. Permut (15111)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
202.346.4000 (tel.)
202.346.4444 (fax)

-and-

R. David Hosp (admitted *pro hac vice*)
Jaren D. Wilcoxson (admitted *pro hac vice*)
Robert D. Carroll (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
617.570.1000 (tel.)
617.523.1231 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 12, 2007.

                                                   /s/ R. David Hosp