IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RECORDED BOOKS, LLC

          Plaintiff/Counter
          Defendant,

OCLC ONLINE COMPUTER LIBRARY
CENTER, INC. d/b/a NETLIBRARY,

          Defendant/Counter
          Plaintiff.

Case No. 07 CV 1427 (DKC)

## FIRST AMENDED COUNTERCLAIMS

Defendant and Counterclaimant OCLC Online Computer Library Center, Inc. d/b/a NetLibrary ("NetLibrary"), by its undersigned attorneys, submits its First Amended Counterclaims to the Complaint filed by Plaintiff Recorded Books, LLC ("Recorded Books") (collectively, the "Parties") and states as follows:

## I.     INTRODUCTION

1.     Recorded Books is refusing to perform under the Parties' 2004 eContent Production and Distribution Agreement ("Agreement"). This case surrounds the development of a distribution system to offer library patrons downloadable electronic audiobooks. NetLibrary creates and supports electronic platforms for the distribution of electronic content (like audiobooks). Recorded Books owns or licenses thousands of audiobook titles.

2.     Knowing that it would take a significant amount of time and money to create and establish this system, the Parties agreed to a commitment through at least 2010.2010 or longer. Over the past three years, NetLibrary successfully created a nation-wide platform to bring Recorded Books'

Dockets.Justia.com

audiobooks to over 1,700 libraries.  Recorded Books now wants to exit the bargained-for Agreement years before it is set to expire.

3.      Recorded Books is acting with willful intention to capitalize on NetLibrary's work and to injure NetLibrary in the marketplace.

4.      NetLibrary brings these claims for breach of contract, specific performance, breach of the covenant of good faith and fair dealing, unfair competition, ~~defamation and disparagement, and~~ tortious interference with prospective economic advantage or economic relationship, and violation of the Colorado Consumer Protection Act.

## II.    PARTIES

5.      NetLibrary is a division of OCLC Online Computer Library Center, Inc., an Ohio nonprofit corporation whose principal place of business is 6565 Kilgour Place, Dublin, Ohio 43017. NetLibrary is headquartered at 4888 Pearl East Circle, Suite 103, Boulder, Colorado 80301.

6.      NetLibrary is an eContent company.  Among other things, NetLibrary creates specialized and proprietary electronic platforms to distribute electronic audiobooks ("e-audiobooks") to libraries and their patrons.  Audiobooks are recordings of books read aloud.  e-audiobooks are digital file versions of audiobooks that are available for download on computers and other devices.

7.      Recorded Books is a limited liability company organized under the laws of Delaware.  Its principal place of business is at 270 Skipjack Road, Prince Frederick, Maryland 20678.

8.      Recorded Books is one of the world's largest independent publishers of unabridged audiobooks.  Recorded Books produces and owns or licenses thousands of audiobook recordings. NetLibrary provides the means to access and download audiobooks over the Internet, while companies like Recorded Books provide the content.

### III.    JURISDICTION AND VENUE

9.    The Court has subject matter jurisdiction over NetLibrary's counterclaims pursuant to 28 U.S.C. 1367(a).

10.    The Court has supplemental jurisdiction over NetLibrary's claims for breach of contract, specific performance, breach of the covenant of good faith and fair dealing, as well as NetLibrary's tort claims, pursuant to 28 U.S.C. § 1367(a), because these counterclaims are compulsory to Plaintiff's federal and state claims upon which jurisdiction is claimed to be based under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

11.    The Court has personal jurisdiction over Recorded Books as Recorded Books' principal place of business is in Maryland.

12.    Venue is proper in this District as Recorded Books resides in this District and has already filed its Complaint and Jury Demand with this Court, to which NetLibrary now responds.

13.    The Parties' Agreement states that New York law will govern claims related to the Agreement's enforcement and construction.  NetLibrary, based in Colorado, has suffered injuries in Colorado and its other claims for relief are asserted accordingly.

### IV.    GENERAL ALLEGATIONS

14.    NetLibrary and Recorded Books entered into an eContent Production and Distribution Agreement ("Agreement") dated September 10, 2004.

**A.    Nature of the eContent Production and Distribution Agreement**

15.    Through the Agreement, the Parties created an Internet-based subscription service for libraries to offer their patrons searchable, downloadable e-audiobooks.  Under the Agreement,

NetLibrary agreed to create electronic versions of Recorded Books' audiobooks or "e-audiobooks" and host access to those e-audiobooks. Recorded Books agreed to provide the e-audiobook content.

16.     Section 1(a) of Exhibit C to the Agreement provides that the "Subscription sales model" is the exclusive means through which NetLibrary could market electronic versions of Recorded Books' audiobooks.

17.     The Parties also agreed to "allow other content providers to contribute content and to participate in [the Agreement's] Subscription sales model on equivalent terms."

18.     NetLibrary has never entered into any agreement with any other content publisher or provider to contribute content and to participate in a "Subscription sales model" to which Recorded Books is not a party.

19.     The Agreement contains various technical and customer service guidelines.

20.     NetLibrary is obligated, under Section 3 of the Agreement, to use commercially reasonable efforts to perform technical and customer service requirements.

21.     Section 4(b) provides that if either party commits a material breach of a material provision of the Agreement, then the non-breaching party can terminate the Agreement only after 60 days' prior written notice and an opportunity to cure.

22.     Exhibit C, paragraph 1(d), provides that the parties will "meet periodically, but no less than once every 6 months, to review both parties' performance under this Agreement."

**B.    Length of the Agreement**

23.     The original term of the Agreement runs from September 10, 2004, through September 10, 2007.

24.     The original term of the Agreement automatically extends to September 10, 2010, pursuant to Section 4(a)(i)(1), if revenues in year three of the Agreement (September 11, 2006 through September 10, 2007) exceed certain revenue targets.

25.     Revenues exceeded the revenue targets in year two and, at the time of this lawsuit, were on track to exceed the revenue targets for year three (2006-2007).

26.     Recorded Books stopped performing under the Agreement on May 31, 2007.

27.     If not for Recorded Books' refusal to operate under the Agreement after May 31, 2007, revenue would have exceeded the Agreement's revenue targets for year three (2006-2007).

28.     As such, the term of the Agreement is currently through September 10, 2010.

29.     Section 4(a)(i) further provides that after September 10, 2010, the Agreement will automatically extend for one-year terms unless one party gives the other party 180 days' prior written notice of termination or revenues fail to meet certain targets after year three of the Agreement.

30.     Even if revenue does not exceed the target, there are lower revenue targets that extend the Agreement.

31.     Revenue has already exceeded the lesser target.

32.     If Recorded Books chooses to terminate the Agreement under this lesser revenue trigger, then Section 4(a)(i)(2)(b) provides a three-year "phase out" period. If NetLibrary chooses to terminate the Agreement under the lesser revenue trigger, Section 4(a)(i)(2)(a) provides a one-year "phase-out" period.

33.     Under any revenue scenario, Section 4(b)(ii) permits a party to the Agreement to terminate the Agreement for "material" breaches of the Agreement, but only after the non-breaching party has provided 60 days' notice of the occurrence of a "material" breach event. This 60-day notice

5

period provides the other party the opportunity to cure or remedy the breach event and, if cured or

remedied, termination is not available.

**C.**    **Performance Under the Agreement**

       34.    The e-audiobook Subscription Service has been very well received.

       35.    Recorded Books and NetLibrary first launched their joint e-audiobook subscription

service in February 2005.

       36.    Over 1,700 libraries have purchased e-audiobook subscriptions.

       37.    Eighty-eight percent of libraries renewed their subscriptions between February 1, 2006,

and February 1, 2007.

       38.    Each year has experienced significant growth in subscriptions and revenue.

**D.**    **Recorded Books' Failed Attempt to Terminate the Agreement**

       39.    By letter dated April 20, 2007 Recorded Books' attorney announced that Recorded Books

was unilaterally terminating the Agreement.

       40.    The April 20, 2007 letter was the first time Recorded Books notified NetLibrary of its

desire to terminate the Agreement.

       41.    Recorded Books stopped performing under the Agreement on May 31, 2007.

       42.    Recorded Books claimed that it was ending the Agreement on the grounds that

NetLibrary violated the exclusivity and technical performance sections of the Agreement.

       43.    Out of more than 1,700 libraries with e-audiobook subscriptions – each subject to the

many technical and support specifications in the Agreement – Recorded Books identified only ~~fourteen~~a

few alleged complaints.

44.    NetLibrary responded to any alleged complaints quickly and professionally and used commercially reasonable efforts to resolve the complaints in situations where resolution was necessary.

45.    None of the alleged complaints involved material violations of the Agreement.

46.    NetLibrary has not caused any material violation of the technical or customer service requirements of the Agreement.

47.    None of the alleged complaints involved NetLibrary's failure to use commercially reasonable efforts.

48.    Recorded Books did not provide NetLibrary with 60 days to cure any alleged deficiencies, as required under Section 4(b)(ii).

49.    ~~Recorded Books never identified how NetLibrary has purportedly violated the exclusivity provisions of the Agreement.~~

50.    ~~To date, Recorded Books has not identified how NetLibrary has purportedly violated the exclusivity provisions of the Agreement. The only allegations in this lawsuit are conclusory and made "[o]n information and belief."~~

49.    ~~51. In fact,~~ NetLibrary has never violated the exclusivity provision of the Agreement.

50.    ~~52.~~ NetLibrary has performed all of its obligations under the Agreement.

51.    ~~53.~~ In response to the April 20, 2007 letter, NetLibrary provided Recorded Books with a letter clearing up any misunderstanding regarding the alleged complaints and reaffirming its commitment to the Agreement.

52.    ~~54.~~ Recorded Books never responded.

53.    ~~55.~~ Recorded Books acted willfully and intentionally to wrongfully attempt to terminate the Agreement.

54.     ~~56.~~ Recorded Books acted intentionally to harm NetLibrary or with reckless indifference as to whether it would harm NetLibrary.

**E.    Other Wrongful Conduct By Recorded Books**

55.     ~~57.~~ Since June 2006, Recorded Books has refused NetLibrary's requests for meetings as required by Exhibit C, paragraph 1(d), to the Agreement.

56.     ~~58.~~ Recorded Books refused to discuss in good faith NetLibrary's express agreement that "netLibrary and Recorded Books will allow other content providers to contribute content and to participate in [the Agreement's] Subscription sales model on equivalent terms," as set forth in Exhibit C, paragraph 1(d).

57.     ~~59.~~ Because Exhibit C, paragraph 1(a), expressly requires Recorded Books' consent to such an arrangement, Recorded Books has an obligation to discuss these arrangements – and actually allow other content providers to contribute – in good faith.

58.     ~~60.~~ Recorded Books' refusal to even discuss allowing other content providers has deprived NetLibrary of the benefit of its bargain.

59.     Recorded Books has alleged that the Agreement required NetLibrary to obtain Recorded Books' consent before entering into agreements with other publishers for non-subscription sales. NetLibrary disagrees with such an assertion.  If the Agreement did contain such a consent requirement, however, then Recorded Books' refusal to meet and discuss the issue in good faith operated as a de facto satisfaction of the requirement.

**F.    Recorded Books' Wrongful Conduct Since its Termination Letter**

60.     ~~61.~~ Since April 20, 2007, Recorded Books has contacted numerous NetLibrary customers and falsely informed them that NetLibrary materially violated the Agreement.

8

61.   62. Upon information and belief, Recorded Books has also been making preparations to unfairly compete with NetLibrary by hosting e-audiobooks through a different platform.

62.   63. Upon information and belief, Recorded Books plans to market this service to potentially all of the thousands of customers currently serviced by NetLibrary under the Recorded Books/NetLibrary partnership.

63.   64. Upon information and belief. Since April 20, 2007, Recorded Books has also contacted libraries that NetLibrary supports, informing them that the Agreement has been terminated and advising them that NetLibrary will no longer be able to provide them with the kind of e-audiobook content they have come to expect.

64.   Recorded Books intentionally and willfully made false statements in an email dated May 4, 2007. In the email, Recorded Books falsely stated that the Agreement had been terminated and, at a time far in advance of the actual expiration of libraries' subscription agreements, stated that libraries would not be able to renew their e-audiobooks subscriptions.

65.   Recorded Books also had its sales team and other employees make extensive telephone calls to libraries further advising the libraries that the Agreement had been terminated and that the libraries would no longer be able to renew their e-audiobooks subscriptions.

66.   Recorded Books directly and indirectly contacted other libraries that had not yet entered into e-audiobook subscription agreements and intentionally, willfully, and falsely advised these libraries that the Agreement between Recorded Books and NetLibrary had been terminated, advising these libraries that they could not enter into e-audiobook subscription agreements under the NetLibrary/Recorded Books subscription model.

67.    65. These communications with current and prospective NetLibrary customers are false, were made eitherknowingly, negligently or with reckless disregard as to whether they were true or false and have, or will, prevent NetLibrary from maintaining and obtaining library customers.

68.    These communications were calculated to cause damage to NetLibrary's business and were made with the purpose of causing NetLibrary to lose the business of current and/or prospective customers.

69.    Recorded Books' statements caused specific and general harm to NetLibrary.

70.    Recorded Books' communications caused many current customer libraries not to renew their subscriptions and caused prospective customer libraries not to enter into subscription agreements.

71.    Recorded Books' communications caused great confusion in the marketplace, further harming NetLibrary's existing and future relationships.

72.    As a direct and proximate result of Recorded Books' actions, several libraries chose not to renew.  These libraries included Prince George's County Memorial Library; CLAMS Library Network; member libraries within the CALIFA network; Commack Public Library; and Boone County Public Library.

73.    As a direct and proximate result of Recorded Books' communications, several libraries, including the Arapahoe Library District in Colorado, chose not to renew their subscriptions and, instead, entered into e-audiobook subscription agreements with NetLibrary's competitors.

74.    Recorded Books' communications further interfered with NetLibrary's current and future customers by intentionally confusing customers with false deadlines and shorter renewal notices.

75.    For example, many libraries either believed that they could not renew their subscriptions (the Charlevoix Public Library and the Westlake Public Library, for instance) or expressed grave

concern over Recorded Books' near-impossibly short two weeks' notice for renewal (Lakeland Library Cooperative; Missouri Library Network Corporation; Juneau Public Library; and St. George's Collierville, for instance).

76.    Recorded Books also directly prevented libraries from renewing or ordering e-audiobook subscriptions.  For example, the Brooklyn Public Library attempted to order a NetLibrary/Recorded Books collection from Recorded Books on July 6, 2007, but Recorded Books did not respond.  As a result, the library was unable to obtain the subscription and its funding was reallocated.

## COUNT I – BREACH OF CONTRACT

77.    66. NetLibrary repeats and restates all previous allegations of its First Amended Counterclaims as and for this paragraph, as if fully set forth herein.

78.    67. NetLibrary and Recorded Books entered into a valid and binding Agreement.

79.    68. Each party received valuable consideration for its performance.

80.    69. NetLibrary has performed under the Agreement, fulfilling all material obligations under the Parties' contract.

81.    70. Recorded Books materially breached the Agreement in the manner set forth above.

82.    71. As a direct and proximate result of Recorded Books' breach, NetLibrary has suffered and will continue to suffer irreparable harm as well as damages in an amount be proven at trial.

## COUNT II – DECLARATORY RELIEF
### (28 U.S.C. § 2201 and F.R.C.P. 57)

83.    72. NetLibrary repeats and restates all previous allegations of its First Amended Counterclaims as and for this paragraph, as if fully set forth herein.

84.    73. NetLibrary has performed all of its obligations under the Agreement.

85. ~~74.~~ NetLibrary has not materially breached any provision of the Agreement, and thus, it remains in full force and effect.

86. ~~75.~~ Recorded Books has stated its intention to refuse to comply with the terms of the Agreement by failing to recognize any e-content orders for new customers after May 31, 2007.

87. ~~76.~~ An actual controversy has arisen between NetLibrary and Recorded Books regarding Recorded Books' continued obligations under the Parties' Agreement. A declaratory judgment is necessary in that NetLibrary contends that both parties are continually obliged to perform under the Agreement and Recorded Books contends that it no longer has any obligations under the Agreement.

## COUNT III – SPECIFIC PERFORMANCE

88. ~~77.~~ NetLibrary repeats and restates all previous allegations of its First Amended Counterclaims as and for this paragraph, as if fully set forth herein.

89. ~~78.~~ A valid contract exists between NetLibrary and Recorded Books (the "Agreement").

90. ~~79.~~ NetLibrary has substantially performed under the Agreement and is willing and able to perform all remaining obligations under the Agreement.

91. ~~80.~~ Recorded Books has breached the Agreement in the manner set forth above.

92. ~~81.~~ Recorded Books is able to continue its performance under the Agreement.

93. ~~82.~~ NetLibrary has no adequate remedy at law because the content provided by Recorded Books is unique and cannot be obtained from alternate sources.

94. ~~83.~~ NetLibrary therefore seeks judgment for specific performance of the Agreement requiring Recorded Books' continued performance under the Agreement.

## COUNT IV – BREACH OF COVENANT OF GOOD FAITH
## AND FAIR DEALING

95. 84. NetLibrary repeats and restates all previous allegations of its First Amended Counterclaims as and for this paragraph, as if fully set forth herein.

96. 85. NetLibrary and Recorded Books entered into a valid and binding Agreement.

97. 86. Each party received valuable consideration for its performance.

98. 87. The Agreement contained an implied covenant of good faith and fair dealing.

99. 88. NetLibrary has performed, fulfilling all material obligations under the Parties' contract Agreement.

100. 89. Recorded Books materially breached the implied covenant of good faith and fair dealing by, among other ways, improperly refusing to meet and confer with NetLibrary, refusing to perform under the terms of the Agreement, demanding that NetLibrary terminate the Agreement, and refusing to discuss allowing other content providers to contribute to the Subscription sales model on equivalent terms.

101. 90. As a direct and proximate result of Recorded Books' bad faith conduct, NetLibrary has suffered and will continue to suffer irreparable harm as well as damages in an amount be proven at trial.

## COUNT V – DEFAMATION

91.     NetLibrary repeats and restates all previous allegations of its Counterclaims as and for this paragraph, as if fully set forth herein.

92.     Recorded Books has caused to be published to third parties false statements regarding NetLibrary's business. These false statements include, but are not limited to, statements that (1) NetLibrary unlawfully and materially breached its Agreement with Recorded Books, (2) NetLibrary

could no longer sell e-audiobook Subscriptions, (3) Recorded Books no longer owed any obligations to provide e-audiobook content to libraries placing orders through NetLibrary after May 31, 2007, and (4) that NetLibrary would no longer be able to deliver content to libraries for orders placed after May 31, 2007.

93.    At the time these statements were published, they were false.

94.    At the time these statements were published, Recorded Books knew that these statements were false, or Recorded Books made them with reckless disregard as to whether or not the statements were true or false.

95.    Recorded Books' statements constitute libel and slander per se because such statements injuriously affect NetLibrary's profession and business by imputing to NetLibrary a lack of capacity or fitness to perform in their profession or business.

96.    Recorded Books has actually and proximately caused and will continue to cause NetLibrary to suffer damages in the loss of its current and prospective customers.

97.    Recorded Books' actions have been, and will continue to be, willful, wanton, and malicious.

98.    NetLibrary continues to be irreparably damaged by Recorded Books' false and defamatory statements to third parties, and NetLibrary has no adequate remedy at law. NetLibrary's unlawful conduct, unless enjoined by the Court, will continue to damage NetLibrary.

**COUNT VI – DISPARAGEMENT**

99.    NetLibrary repeats and restates all previous allegations of its Counterclaims as and for this paragraph, as if fully set forth herein.

14

100.    Recorded Books has willfully and intentionally made false and derogatory statements regarding NetLibrary's business to current and prospective NetLibrary customers.

101.    Recorded Books has caused to be published to third parties false statements regarding NetLibrary's business.  These false statements include, but are not limited to, statements that (1) NetLibrary unlawfully and materially breached its Agreement with Recorded Books, (2) NetLibrary could no longer sell e-audiobook Subscriptions, (3) Recorded Books no longer owed any obligations to provide e-audiobook content to libraries placing orders through NetLibrary after May 31, 2007, and (4) that NetLibrary would no longer be able to deliver content to libraries for orders placed after May 31, 2007.

102.    At the time these statements were published, they were false.

103.    At the time these statements were published, Recorded Books knew that these statements were false, or Recorded Books made them with reckless disregard as to whether or not the statements were true or false.

104.    Recorded Books knew or should have known that the unfounded and disparaging remarks regarding NetLibrary's business that Recorded Books made to NetLibrary's current and prospective customers were likely to harm NetLibrary's pecuniary interests.

105.    NetLibrary has suffered damages as a result of Recorded Books' disparagement in an amount to be determined at trial. **COUNT VII — TORTIOUS INTERFERENCE**

**WITH PROSPECTIVE ECONOMIC ADVANTAGE OR ECONOMIC RELATIONSHIP**

102. ~~106.~~ NetLibrary repeats and restates all previous allegations of its First Amended Counterclaims as and for this paragraph, as if fully set forth herein.

103. ~~107.~~ Based on its reputation, experience, and skilled personnel, NetLibrary has the potential to acquire orders and subscriptions with new customers and continue relationships with current customers for NetLibrary's e-audiobook hosting services.

104. ~~108.~~ Through its tortious conduct in dealing with third parties, however, including but not limited to its intentional and willful misrepresentations and the ~~disparaging, defamatory~~ wrongful and false statements made to NetLibrary's current and prospective customers, Recorded Books has intentionally and improperly interfered with the prospective contractual relations between NetLibrary and its potential customers, as well as with NetLibrary's ongoing relations with current customers.

105. ~~109.~~ Recorded Books' intentional, willful and improper interference with the prospective business and contractual relations between NetLibrary and potential customers and with NetLibrary's ongoing relations with current customers induced or otherwise caused current and potential customers not to enter into or continue the prospective relationship with NetLibrary, and/or prevented NetLibrary from acquiring or continuing the prospective relationship.

106. The communications described above were false and Recorded Books knew they were false at the time they were made, or either negligently or recklessly disregarded whether the statements were true of false when made. These communications constituted willful and intentional acts.

107. Recorded Books' statements were calculated to cause damage to NetLibrary in its lawful business and were made with the intent of causing NetLibrary to lose the business of current and/or prospective customers. Recorded Books was wrong and unjustified in making these statements.

108.    As a direct result of Recorded Books' statements, relationships between NetLibrary and several current and/or prospective customers ended.

109.    ~~110.~~ These relationships would have continued or been acquired but for Recorded Books' conduct.

110.    ~~111.~~ Recorded Books' interference with these relationships actually and proximately caused and will continue to cause NetLibrary to suffer substantial losses.

111.    ~~112.~~ Recorded Books' employed wrongful means to interfere with NetLibrary's prospective and ongoing relationships.

112.    ~~113.~~ NetLibrary has and will continue to suffer economic damages and has and will continue to be irreparably damaged by Recorded Books' intentional interference with NetLibrary's prospective business and contractual relations, ~~and NetLibrary has no adequate remedy at law.~~ ~~Recorded Books' intentional interference with prospective business and contractual relations will~~ ~~continue to damage NetLibrary unless enjoined by the Court.~~

## COUNT ~~VIII~~VI – UNFAIR COMPETITION

113.    ~~114.~~ NetLibrary repeats and restates all previous allegations of its First Amended Counterclaims as and for this paragraph, as if fully set forth herein.

114.    ~~115.~~ Recorded Books has made intentional and knowing misrepresentations ~~and the~~ ~~disparaging, defamatory statements made~~ to NetLibrary's current and prospective customers, as set forth above.

115.    ~~116.~~ Recorded Books has intentionally interrupted NetLibrary's business by making false and misleading statements about NetLibrary's right to deliver uninterrupted content after May 31, 2007.

116.    ~~117.~~ Recorded Books has intentionally created a false dispute as to NetLibrary's rights to distribute Recorded Books' content.

117.    ~~118.~~ Recorded Books has intentionally communicated and otherwise disseminated this false dispute to NetLibrary's customers and potential customers in an effort to gain an undue advantage.

118.    ~~119.~~ Recorded Books has and will continue to damage and/or jeopardize NetLibrary's business.

119.    ~~120.~~ NetLibrary has and will continue to suffer economic damages ~~and has and will continue to be irreparably damaged by Recorded Books' unfair and deceitful methods, and NetLibrary has no adequate remedy at law. Recorded Books' unfair business practices will continue to damage NetLibrary unless enjoined by the Court.~~

**COUNT ~~IX~~VII – COLORADO CONSUMER PROTECTION ACT**
**(Colo. Rev. Stat § 6-1-101, et seq.)**

120.    ~~121.~~ NetLibrary repeats and restates all previous allegations of its Counterclaims as and for this paragraph, as if fully set forth herein.

121.    ~~122.~~ Through its tortious conduct in dealing with third parties, including but not limited to its intentional, knowing misrepresentations and ~~the disparaging, defamatory~~false statements made to NetLibrary's current and prospective customers (including its intentional communication and dissemination of a false dispute), Recorded Books has engaged in unfair or deceptive trade practices.

122.    ~~123.~~ Such practices occurred in the course of Recorded Books' business.

123.    ~~124.~~ Such practices significantly impacted the public as actual or potential consumers of Recorded Books' goods and/or services as Recorded Books' current and potential customers number at least in the thousands.

124. ~~125.~~ NetLibrary has been injured in the course of its business as a result of Recorded Books' deceptive trade practices.

125. ~~126.~~ NetLibrary has and will continue to suffer economic damages and has and will continue to be irreparably damaged by Recorded Books' unfair trade practices and bad faith conduct, and NetLibrary has no adequate remedy at law. Recorded Books' unfair trade practices will continue to damage NetLibrary unless enjoined by the Court.

WHEREFORE, Counterclaimant NetLibrary prays as follows:

A.     For judgment in its favor and against Counter defendant Recorded Books;

B.     For specific performance of the Parties' Agreement;

C.     For a preliminary and permanent injunction enjoining Recorded Books from terminating the Agreement, from engaging in unfair competition and from making further ~~disparaging, defamatory remarks~~misrepresentations about ~~NetLibrary~~the Parties' Agreement;

D.     For damages in an amount to be determined at trial, plus interest thereon at the statutory rate;

E.     For treble and other exemplary damages,

F.     For reasonable costs incurred herein; and

G.     For such other relief as the Court deems proper.

Dated this ~~19~~14th day of ~~June~~August, 2007.

_____
Hugh J. Marbury (Fed. Bar No. 24653)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland  21209
410-580-3000
410-580-3001 (facsimile)

Attorneys for OCLC Online Computer Library
Center, Inc., d/b/a NetLibrary

*Of Counsel*

Randall H. Miller, Esq.
Eve Burton, Esq.
Jason Prussman, Esq.
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado  80203-4541
303-861-7000
303-866-0200 (facsimile)
(*Pro hac vice* ~~applications pending~~)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this ~~19~~14th day of ~~June~~August, 2007, a true and correct copy of the foregoing **FIRST AMENDED** COUNTERCLAIMS was filed and served electronically as follows:

> David L. Permut
> GOODWIN PROCTER LLP
> 901 New York Avenue, NW
> Washington, DC 20001
>
> R. David Hosp
> Jaren D. Wilcoxon
> Robert D. Carroll
> GOODWIN PROCTER LLP
> Exchange Place
> Boston, MA 02109

_____

Hugh J. Marbury